**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JACQUELYN ARTHUR,                                    No. 2:12-cv-2602-CMK

        Plaintiff,

    vs.                                              <u>MEMORANDUM OPINION AND ORDER</u>

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                    /

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 20). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on May 6, 2009, alleging an onset of

disability on May 4, 2009, due to disabilities including disorders of back, and borderline

intellectual function (Certified administrative record ("CAR") 57, 104, 116, 121).  Plaintiff's

claim was denied initially and upon reconsideration.  Plaintiff requested an administrative

hearing, which was held on October 18, 2010, before Administrative Law Judge ("ALJ") Jean R.

Kerins.  In a March 18, 2011, decision, the ALJ concluded that plaintiff is not disabled[2] based on

---

[1]     Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1  the following findings:

2      1.    The claimant has not engaged in substantial gainful activity since May 6, 2009, the application date (20 CFR 416.971 *et seq.*).

3      2.    The claimant has the following severe impairments: hyperextension injury of the cervical spine, with laminoplasty; and a learning disorder (20 CFR 416.920(c)).

4      3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

    4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the unskilled, light work as defined in 20 CFR 414.967(b). The claimant can occasionally climb ladders, balance, and stoop, kneel, crouch and crawl.  The claimant is able to understand, remember and carry out simple instructions; make judgments on simple work related decisions; interact appropriately with the public, supervisors and coworkers; and, respond appropriately to usual work situations and to changes in a routine work setting.

    5.    The claimant is unable to perform any past relevant work (20 CFR 416.965).

    6.    The claimant was born on November 15, 1964 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

    7.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

    8.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

    9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

    10.    Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

    11.    The claimant has not been under a disability, as defined in the

Social Security Act, since May 6, 2009, the date the application was filed (20 CFR 416.920(g)).

(CAR 10-18).  After the Appeals Council declined review on August 17, 2012, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

## III.  DISCUSSION

Plaintiff argues the ALJ failed to properly assess and find plaintiff's mental

impairment met or equaled the criteria under 12.05(b) or (c) in the Listing of Impairments

The Social Security Regulations "Listing of Impairments" is comprised of

impairments to fifteen categories of body systems that are severe enough to preclude a person

from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

1985).

Listing 12.05, which governs mental retardation, explains that

> Mental retardation refers to significantly subaverage general
> intellectual functioning with deficits in adaptive functioning
> initially manifested during the developmental period; *i.e.*, the
> evidence demonstrates or supports onset of the impairment before
> age 22.
> The required level of severity for this disorder is met when the
> requirements in A, B, C, or D are satisfied.
> . . .
> B.  A valid verbal, performance, or full scale IQ of 59 or
> less;
> OR
> C.  A valid verbal, performance, or full scale IQ of 60
> though 70 and a physical or other mental impairment
> imposing an additional and significant work-related
> limitation or function. . . .

20 CFR, Part 404, Subpart P, Appendix 1.

Here, as to plaintiff's mental impairments the ALJ found it did not meet or equal

the listing criteria:

> The claimant's mental impairment does not meet or medically
> equal the criteria of listings 12.05.  The listing under 12.05 requires
> a finding that the individual has mental retardation with deficits in
> adaptive functioning initially manifested prior to age 22.  Although
> the claimant has limited academic success and an IQ score of 55 of
> questionable validity, no source has provided a diagnosis of mental
> retardation.  Examiners and Disability Determination Service

1    sources provided a diagnosis of a learning disorder and impaired
     intellectual functioning, but not mental retardation.  The claimant's
2    one-time low IQ score may be attributable to a lethargic effort.  In
     addition, it is noted that within six months of scoring a 55 on an IQ
3    test, the claimant underwent additional testing and gave an
     inconsistent and poor effort, which the examiner noted was clearly
4    indicative of malingering.  In fact, the psychologist suggested that
     the claimant attempted to portray herself in a negative way for
5    possible secondary gain, and concluded that the test results were
     invalid and unreliable. (Exhibit 4F).
6

7    It is also noted that the claimant's adaptive functioning is quite
     good.  She maintains her own household and cares for children.
     She has a driver's license and shops.  The claimant admitted that
8    she handles her own finances and pays her own bills (Exhibits 4E
     and 4F).  She has worked part time in the past as a cashier and was
9    able to complete disability forms.  A medical expert and physicians
     with Disability Determination Service did not find that the
10   claimant met or equaled the requirements of 12.05C and the record
     as a whole supports a conclusion that this listing is not met because
11   the claimant does not have a mental retardation first manifested
     prior to age 22 or exhibit the adaptive limitations expected at a
12   listing level severity for mental retardation.

13   In making this finding, the undersigned has considered whether the
     "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are
14   satisfied.  To satisfy the "paragraph B" criteria ("paragraph D"
     criteria of listing 12.05), the mental impairment must result in at
15   least two of the following: marked restriction of activities of daily
     living; marked difficulties in maintaining social functioning;
16   marked difficulties in maintaining concentration, persistence, or
     pace; or repeated episodes of decompensation, each of extended
17   duration.  A marked limitation means more than moderate but less
     than extreme.  Repeated episodes of decompensation, each of
18   extended duration, means three episodes within 1 year, or an
     average of once every 4 months, each lasting for at least 2 weeks.
19

20   In activities of daily living, the claimant has mild restriction.  The
     record does not show impairment in this area related to a mental
     impairment and reflects that the claimant is independent in
21   performing her personal care and activities of daily living.  The
     claimant cooks, shops, and she has been described as well dressed
22   and groomed (Exhibit 4F).

23   In social functioning, the claimant has no difficulties.  The
     claimant admitted that she socializes with others, and plays cards
24   with her family.  The claimant has been able to effectively
     communicate, and no examiner has suggested serious impairment
25   in this domain.

26   / / /

1          With regard to concentration, persistence or pace, the claimant has
2         moderate difficulties.  Clearly, the record reflects some impairment
          in this area, as testing has displayed findings compatible with a
3         learning disorder and limited intellectual functioning.  The
          claimant's academic skills have been measured in the low grade
4         school range.  Nonetheless, the record also shows that the
          claimant's adaptive functioning is quite good, and she is
5         functioning at a higher level than demonstrated by her test results.
          The claimant is independent in activities of daily living, handles
6         her own finances, and has a driver's license, certainly activities
          requiring good levels of attention and concentration.  Moreover,
7         the claimant has worked as a cashier and in 2009, she was self-
          employed (Exhibit 3D).

8          As for episodes of decompensation, the claimant has experienced
9         no episodes of decompensation, which have been of extended
          duration.

10         Because the claimant's mental impairment does not cause at least
         two "marked" limitations or one "marked" limitation and
11        "repeated" episodes of decompensation, each of extended duration,
         the "paragraph B" criteria ("paragraph D" criteria of listing 12.05)
12        are not satisfied.

13  (CAR 22-23)

14         Plaintiff argues that she met the requirements of 12.05(B) and (C).  She states that

15  IQ testing documented a Verbal Comprehension IQ score of 60 and a full scale IQ of 55, which

16  satisfies the 12.05(B) listing requirement.  In addition, her verbal IQ of 60 also meets the first

17  prong of 12.05(C) listing requirement, and she has demonstrated deficits in adaptive functioning

18  which manifested before age 22, including poor performance in school, limited work history, and

19  she has help from her teenaged children with the household.

20         Defendant counters that substantial evidence supports the ALJ's findings,

21  especially given the objective psychological testing which indicated malingering.  Defendant

22  argues the ALJ provided multiple reason for finding plaintiff's IQ test scores not valid, which is

23  supported by substantial evidence.  Defendant contends the ALJ supported her decision with

24  evidence in the record including the consulting examiner's finding of malingering, the non-

25  examining State agency psychologist's opinion that plaintiff did not meet the listing criteria,

26  plaintiff's daily activities demonstrated mental function beyond what the IQ testing indicated,

1    and even notations by the original testing doctor that plaintiff put forth a poor effort during

2    testing.

3               There are conflicting medical opinions at issue here, which the ALJ was required

4    to evaluate.  To evaluate whether the Commissioner properly rejected a medical opinion the court

5    considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support

6    the opinions.  The Commissioner may reject an  uncontradicted opinion of a treating or

7    examining medical professional only for "clear and convincing" reasons supported by substantial

8    evidence in the record.  See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995).  While a treating

9    professional's opinion generally is accorded superior weight, if it is contradicted by an examining

10   professional's opinion which is supported by different independent clinical findings, the

11   Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir.

12   1995).  A contradicted opinion of a treating or examining professional may be rejected only for

13   "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.

14   This test is met if the Commissioner sets out a detailed and thorough summary of the facts and

15   conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See

16   Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).

17               Dr. Pickel, a Licensed Educational Psychologist, performed IQ testing on plaintiff

18   on referral from the Sacramento County Department of Human Assistance, in order to identify

19   learning strengths and challenges and to determine if plaintiff was eligible for educational or

20   employment accommodations.  In his January 21, 2009, report, Dr. Pickel stated that plaintiff

21   scored significantly below the average range on the Wechsler Adult Intelligence Scale - IV

22   (WAIS-IV).  Plaintiff's full scale IQ was 55, and her Cognitive Ability Quotient was 67.  Dr.

23   Pickel observed that plaintiff seemed to put forth efforts to complete the evaluation, was

24   somewhat friendly but also seemed irritated and tired.  Plaintiff tended to withdraw efforts when

25   tasks became difficult, had a hard time following directions and did not seem to listen carefully.

26   (CAR 482-97).  Dr. Pickel found plaintiff met the criteria for being Learning Disabled under the

1   Developmentally Delayed Learner classification, and that she could benefit in the workplace with

2   some accommodations.

3                   Dr. Nakagawa examined plaintiff on August 17, 2009.  Dr. Nakagawa made an

4   affirmative finding that plaintiff was malingering, due to her inconsistent recall of three digits

5   forward, inaccurate responses to the number of days in a week, the shape of a common geometric

6   form, and her very inconsistent, poor effort on all testing.  Dr. Nakagawa noted that plaintiff

7   "attempted to present in a negative way for possible secondary gain" rendering the data invalid

8   and unreliable.  (CAR 301-02).  Dr. Nakagawa did not report plaintiff's IQ scores due to

9   malingering.  She further found plaintiff's efforts to be malingered on the Bender Gestalt-II and

10  Trial Making Test.  She then administered the TOMM, which clearly evidenced  malingering.

11  Dr. Nakagawa reported that "[i]n clinical interview and testing, [plaintiff] put forth limited effort.

12  Malingering was evident on the well-normed test to screen for malingering.  As a result, it is

13  impossible to provide an accurate assessment of her functional work capabilities."  (CAR 302).

14                  Based on these two conflicting medical opinions, and the findings of malingering,

15  a medical expert, Dr. Walter was asked to examine the record and offer an opinion.  Dr. Walter,

16  in response to the interrogatories sent, opined that there was enough evidence to support invalid

17  findings on most testing and well supported evidence of malingering.  He agreed with Dr.

18  Pickel's conclusion that plaintiff meets the criteria for Developmentally Delayed Learner as she

19  is a slow learner, but that there is nothing in the record to support a finding of ADHD.  He found

20  plaintiff capable of simple 1-3 step work functions based on her ability to obtain a driver's

21  license, her past work, her ability to complete the Social Security forms by herself, and that her

22  complaints relate mostly to her physical condition.  (CAR 516-23).

23                  The undersigned does not agree with plaintiff's contention that the finding of

24  malingering does not bring the validity of the prior testing into question.  Listing 12.05 requires a

25  valid IQ test.  An examining medical source's determination that the plaintiff was malingering is

26  supportive of the ALJ's determination that the prior IQ score was not valid.  See Wedge v.

1 | <u>Astrue</u>, 624 F.Supp.2d 1127, 1131-35 (C.D. Cal. 208) (summarizing out-of-circuit cases' use of

2 | the possibility of malingering to question the validity of IQ scores).

3 |       The ALJ's determination is supported not only by Dr. Nakagawa's finding of

4 | malingering, but also by the State agency psychiatrist and the medical expert, Dr. Walter.  In

5 | addition, the ALJ provided multiple reasons in support of her determination, including plaintiff's

6 | activities of daily living, her social functioning, her ability to maintain her household including

7 | driving, shopping, paying her own bills, and her past work as a cashier.  In addition, the ALJ

8 | noted that despite Dr. Pickel's IQ score, he did not suggest plaintiff is incapable of working.

9 | (CAR 28).   The reasons set forth by the ALJ are specific and legitimate, even clear and

10 | convincing.  The ALJ's determination is well supported by the record, and the undersigned finds

11 | no reversible error.

12 | **IV.  CONCLUSION**

13 |       Based on the foregoing, the court concludes that the Commissioner's final

14 | decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

15 | ORDERED that:

16 |       1.    Plaintiff's motion for summary judgment (Doc. 16) is denied;

17 |       2.    Defendant's cross-motion for summary judgment (Doc. 20) is granted; and

18 |       3.    The Clerk of the Court is directed to enter judgment and close this file.

19 |

20 | DATED: March 28, 2014

21 |

22 | CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

10